UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

ILONA ISOM

    Plaintiff,
vs.

CARNIVAL CORPORATION,

    Defendant.
_____/

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, ILONA ISOM ("Plaintiff" or "Mrs. Isom"), by and through undersigned counsel, hereby sues Defendant, CARNIVAL CORPORATION ("CARNIVAL"), a Foreign Corporation, and alleges:

## THE PARTIES

1. That at all times material Mrs. Isom was a citizen and resident of the State of Florida, USA.

2. Defendant CARNIVAL is a Panama corporation with its principal place of business in Miami-Dade, Florida. At all material times, upon information and belief, CARNIVAL was the owner, operator or *pro hac vice* of the subject cruise vessel, and the employer of or responsible for all the shipboard personnel, including the vessel's medical staff, navigational officers and employees charged with the duty to maintain shipboard equipment, including but not limited to automatic sliding glass doors (hereinafter "automatic doors").

## JURISDICTION & VENUE

3. This action seeks damages that exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest and attorney fees, and there is complete diversity between the

Parties hereto. Thus, this Court has diversity subject matter jurisdiction pursuant to *28 USC §1332.*

4. That this Court also has admiralty subject matter initial jurisdiction pursuant to *28 USC §1332* as the alleged negligent conduct and injury occurred on navigable waters and the impact of which had the potential to disrupt maritime commerce.

5. That at all times material the Defendant, CARNIVAL CORPORATION, (hereinafter "CARNIVAL") was the owner, operator, or *pro hac vice* of the Vessel.

6. This Court has personal jurisdiction over the Defendant and venue is proper as:

    a. CARNIVAL'S principal places of business is located within Miami-Dade County, Florida; and/or

    b. CARNIVAL conducts substantial business within the State of Florida, including but not limited to operating passenger cruise vessels departing and returning to ports located in Miami, and/or Tampa, Cape Canaveral, Ft. Lauderdale, and Jacksonville;

    c. CARNIVAL issued a ticket contract requiring this personal injury action be filed in this Court thereby subjecting itself to this Court's personal jurisdiction.

7. That venue is proper in this Court under 28 U.S.C. § 1391 as Defendant has its principal place of business in Miami-Dade County, Florida and therefore is deemed to reside here and/or the cruise line ticket at issue also requires that suit be brought in this Court.

8. That all conditions precedent for filing and maintain this action have been satisfied, waived or do not apply. Plaintiff is no longer in possession of her Cruise Ticket Contract, but CARNIVAL does have a copy of it.

## **GENERAL ALLEGATIONS**

9. Plaintiff entered into a contract of carriage with the Defendant for the purpose of a cruise aboard the CARNIVAL *MARDI GRAS*. The cruise embarked from Port Canaveral on September 11, 2021. While aboard the Vessel, Plaintiff occupied the status of a cruise ship passenger.

10. That Defendant, as common carrier, is engaged in the business of providing vacation cruises to the public aboard various vessels, including the subject Vessel. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the CARNIVAL *MARDI GRAS*.

11. That Defendant through online, television, radio and print advertisements specifically market their cruises as family friendly vacations with extensive offerings and activities for people of all ages, abilities, and financial stature.

12. The incident which is the subject of this action occurred on or about September 17, 2021, aboard the cruise ship CARNIVAL *MARDI GRAS* (hereinafter referred to as, "The Vessel") while The Vessel was in navigable waters.

13. At the time of the incident, Plaintiff occupied the status of a passenger.

14. The Vessel was owned and/or operated and/or maintained by Defendant.

15. On the date alleged above, Mrs. Isom was in the Lido Marketplace dining room for breakfast.  Mrs. Isom sat at one of the tables that moments earlier had been sanitized or wiped down by a crewmember.  Mrs. Isom saw crewmembers sanitizing or wiping down tables in the area moments leading up to Plaintiff suffering her injuries.  Upon sitting, Mrs. Isom ran her hand across the tabletop, sat down and placed her hands on her lap.

16. Within minutes of doing so. Mrs. Isom felt a burning sensation in the affected

areas mostly on her right thigh.  Mrs. Isom immediately sought medical care at the ship's medical center for the burning red, welts that appeared on her thighs.

17. At the ship's medical center, *CARNIVAL* had a trial run paramedic on duty who merely prescribed a cortisone cream and did not provide any additional treatment.

18. Noticing that the area was not improving with the prescribed medications, Plaintiff sought additional medical care with a dermatologist upon arriving home.  The dermatologist diagnosed Mrs. Isom with chemical burns to her thighs and advised that the medications prescribed by the *CARNIVAL's* medical staff was the incorrect medication for her type of injury.

19. As a result, of CARNIVAL'S negligence Plaintiff had to undergo additional medical treatment and now suffers from permanent scarring to her right thigh.

**COUNT I**
**NEGLIGENCE**

Plaintiff readopts and alleges paragraphs 1 through 19 as though fully set forth herein, and further alleges as follows:

20. That at all times material, CARNIVAL owed Plaintiff the duty to exercise reasonable care under the circumstances.

21. Defendant owed Plaintiff the duty of reasonable care under the circumstances to maintain a reasonably safe premises and the duty to warn Plaintiff of all dangers it knew or should have known.

22. Defendant was negligent as it breached its duty by:

   a. Failing to maintain the dining tables in a reasonably safe manner for passengers;

    b. Failing to warn, or sufficiently warn, passengers of the dangers of the cleaning chemicals/agents used on the dining tables;

    c. Failing to train, or sufficiently train, its crew on the how to properly clean and dry the dining tables with shipboard cleaning chemicals/agents;

    d. Failing to ensure crewmembers follow and implement policies and procedures, both shipboard and per manufacturer's use and warning labels, regarding shipboard cleaning chemicals/agents;

    e. Failing to comply with its own standards and/or industry standards regarding the proper use of shipboard cleaning chemicals/agents;

    f. Selecting a cleaning agent that did not have sufficient safety features thereby allowing the passengers to become injured;

    g. All other negligence acts and omissions to be learned in discovery.

23. With regard to the alleged unsafe, dangerous or defective condition(s), policy(ies) or procedure(s), the Defendant:

    a. Knew of the foregoing conditions, policies or procedures in advance of the subject incident, but did not correct or warn of such, or

    b. The foregoing conditions, policies or procedure existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have known of such, but did not correct or warn of them, or

    c. Insofar as relates to the foregoing conditions, policies or procedures not created by the Defendant, Defendant's knowledge was or should have been acquired through (i) prior similar incident(s) and/or (ii) through its

maintenance, inspection and/or observation(s) of the aforesaid conditions, policy(ies) or procedure(s) through shipboard personnel present at times leading up to and/or at the time of the subject incident or who otherwise were charged with such duties and/or (iii) through implementation of policies and/or procedures intended to prevent creation of such, but did not correct or warn of them, or

d. Insofar as relates to the foregoing conditions, policies or procedures created by the Defendant, by or through a person or entity acting for or on its behalf, knowledge or notice on the part of the Defendant is obviated because Defendant is indirectly / vicariously liable.

24. Defendant was also aware of the unreasonably dangerous condition posed by the cleaning chemicals/agents in that it directed and/or participated in the selection and purchase of said chemicals/agents.

25. As a result of Defendant's negligence, Plaintiff suffered bodily injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, medical and nursing care and treatment. These losses are either permanent or continuing in nature.

## COUNT II
## VICARIOUS LIABILITY

Plaintiff readopts and alleges paragraphs 1 through 19 as though fully set forth herein, and further alleges as follows:

26. That at all times material, CARNIVAL owed Plaintiff the duty to exercise reasonable care under the circumstances.

27. Defendant owed Plaintiff the duty of reasonable care under the circumstances to

maintain a reasonably safe premises and the duty to warn Plaintiff of all dangers it knew or should have known.

    28.    Defendant was negligent as it breached its duty by:

        a. Failing to clean the dining tables with a non-irritating chemical cleaner/agent;

        b. Failing to use shipboard cleaning chemicals/agents in prescribed concentrations so as to avoid caustic solutions;

        c. Failing to properly clean and dry the dining tables with shipboard chemical cleaners/agents prior to passenger use;

        d. Failing to maintain the dining tables in a reasonably safe manner for passengers free of shipboard chemical cleaners/agents;

        e. Failing to properly advise passengers of the dangers of the cleaning chemicals/agents used on the dining tables;

        f. Failing to properly cordon off the area and/or block access to the dining tables while still wet with cleaning chemicals/agents;

        g. Failing to post signs warning and/or cautioning that the dining tables are cleaned with chemicals/agents that can cause burns;

        h. All other negligence acts and omissions to be learned in discovery.

    29.    With regard to the alleged unsafe, dangerous or defective condition(s), policy(ies) or procedure(s), the Defendant:

        a. Knew of the foregoing conditions, policies or procedures in advance of the subject incident, but did not correct or warn of such, or

    b. The foregoing conditions, policies or procedure existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have known of such, but did not correct or warn of them, or

    c. Insofar as relates to the foregoing conditions, policies or procedures not created by the Defendant, Defendant's knowledge was or should have been acquired through (i) prior similar incident(s) and/or (ii) through its maintenance, inspection and/or observation(s) of the aforesaid conditions, policy(ies) or procedure(s) through shipboard personnel present at times leading up to and/or at the time of the subject incident or who otherwise were charged with such duties and/or (iii) through implementation of policies and/or procedures intended to prevent creation of such, but did not correct or warn of them, or

    d. Insofar as relates to the foregoing conditions, policies or procedures created by the Defendant, by or through a person or entity acting for or on its behalf, knowledge or notice on the part of the Defendant is obviated because Defendant is indirectly / vicariously liable.

30. Defendant was also aware of the unreasonably dangerous condition posed by the cleaning chemicals/agents in that it directed and/or participated in the selection and purchase of said chemicals/agents.

31. As a result of Defendant's negligence, Plaintiff suffered bodily injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, medical and nursing care and treatment.  These losses are either permanent or continuing in nature.

WHEREFORE, Plaintiff demands judgment against the Defendant, CARNIVAL, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by law, as well as any further relief as this Court deems just and appropriate.

## COUNT III
### VICARIOUS LIABILITY FOR NEGLIGENCE OF MEDICAL STAFF
### (ACTUAL AGENCY / RESPONDEAT SUPERIOR)

Plaintiff readopts and realleges paragraphs one (1) through sixty-six (19) as though fully set forth herein, and further alleges as follows:

32. That at all times material, CARNIVAL owed Plaintiff the duty to exercise reasonable care under the circumstances.  In particular, Plaintiff presented to the Ship's medical center and staff suffering from chemical burns to her legs, and Defendant owed Plaintiff the duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent medical staff would render under similar circumstances.

33. That CARNIVAL, by and through its employees and/or actual agents, including the Ship's nurse(s) and physician(s), breached its duty of care owed to Plaintiff in one or more of the following ways:

   a) Defendant failed to properly assess the gravity of Plaintiff's medical condition;

   b) Defendant prescribed cream that was contraindicated for Plaintiff's medical condition;

   c) Defendant, though its ship's doctor, failed to appropriately diagnose Plaintiff;

   d) Defendant failed treat Plaintiff in a timely and appropriate manner while she was on the Vessel, including but not limited to having insufficient trained medical personnel man the medical center without sufficient trained medical supervision;

   e) Defendant failed to utilize or adequately utilize available diagnostic equipment

and/or techniques to assess appropriately Plaintiff's condition;

f) Defendant failed to properly monitor Plaintiff;

g) Defendant failed to obtain appropriate consultation in a timely manner with land-based specialists available on a 24/7 basis to provide timely and appropriate medical care and treatment of Plaintiff;

h) Defendant failed to utilize "Telemedicine" and other resources on the Vessel to properly assess Plaintiff's condition;

i) Defendant deviated from the standard of care for treating patients in Plaintiff's condition.

34. That as a direct and proximate result of the negligence of the Defendant as described above, Plaintiff suffered extensive and permanent damage, and will require otherwise unnecessary ongoing treatment in the future. That as a further result of the Defendant's negligence, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a known or unknown previously existing condition. The losses are either permanent or continuing in nature and Plaintiff will continue to suffer the losses in the future.

35. That the employment relationship and/or actual agency existed as a result of written agreements and/or course and conduct, which provided that CARNIVAL had control or right of control over the duties and practice of the aforementioned shipboard personnel.

36. That the control or right of control that created the employment relationship and/or actual agency included, but was not necessarily limited to the following:

a) That Defendant had the right to hire and fire the Shipboard physician, its nurses and/or

Master;

b) That Defendant directly employed and paid a salary to the Shipboard physician, its nurse and/or Master;

c) That Defendant had the power to determine the working hours of the Ship's physician, its nurse and Master;

d) That Defendant had the right to transfer its physician, other medical personnel and the Vessel's Master to and from any of its Vessels at its discretion;

e) That while under contract to and/or control of Defendant, the physician and nurse were not permitted to practice medicine either on their own or for any other entity;

f) That the physician and nurse conducted their practice onboard the Vessel and within the medical center, which was provided by Defendant, including all equipment and medicines;

g) That the medical center was created, owned and operated by Defendant;

h) That Defendant represented and held out to immigration authorities and passengers that the medical personnel were members of the Ship's crew;

i) That Defendant selected and provided all of the medicines, equipment, supplies and other tools utilized by the Shipboard physician and nurse to treat passengers.

37. That Plaintiff was directly charged for medical services as determined by CARNIVAL.

38. That none of the charges to Plaintiff were received by the Ship's doctors and/or nurses, who instead were paid a salary by CARNIVAL as its employee.

WHEREFORE, Plaintiff demands judgment against the Defendant, CARNIVAL, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by

### COUNT IV: CARNIVAL'S VICARIOUS LIABILITY
### FOR NEGLIGENCE OF MEDICAL STAFF
### (APPARENT AGENCY)

Plaintiff readopts and realleges the preliminary allegations contained in paragraphs one (1) through nineteen (19) as though fully set forth herein, and further alleges as follows:

40. That at all times material, the Defendant, CARNIVAL, and its Shipboard employees, agents and/or apparent agents owed a duty to the Plaintiff to provide prompt and appropriate medical care as regards the symptoms with which the Plaintiff presented to the Defendant.

41. That the Defendant, CARNIVAL, by and through its employees, including the Ship's nurse and physicians, breached the duty of care which it owed to the Plaintiff and were negligent in one or more of the following manners:

   a) Defendant failed to properly assess the gravity of Plaintiff's medical condition;

   b) Defendant prescribed cream that was contraindicated for Plaintiff's medical condition;

   c) Defendant, though its ship's doctor, failed to appropriately diagnose Plaintiff;

   d) Defendant failed treat Plaintiff in a timely and appropriate manner while she was on the Vessel, including but not limited to having insufficient trained medical personnel man the medical center without sufficient trained medical supervision;

   e) Defendant failed to utilize or adequately utilize available diagnostic equipment and/or techniques to assess appropriately Plaintiff's condition;

   f) Defendant failed to properly monitor Plaintiff;

   g) Defendant failed to obtain appropriate consultation in a timely manner with land-

    based specialists available on a 24/7 basis to provide timely and appropriate medical care and treatment of Plaintiff;

  h) Defendant failed to utilize "Telemedicine" and other resources on the Vessel to properly assess Plaintiff's condition;

  i) Defendant deviated from the standard of care for treating patients in Plaintiff's condition.

  42. That as a direct and proximate result of the negligence of the Defendants as described above, the Plaintiff suffered extensive and permanent damage, and will require ongoing treatment in the future. That as a further result of the Defendant's negligence, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a known or unknown previously existing condition. The losses are either permanent or continuing in nature and the Plaintiff will continue to suffer the losses in the future.

  43. That at all times material, the Defendant, CARNIVAL, held out its medical staff, including its doctors and nurses, as being its employees and/or apparent agents who work in the Defendant's "medical centers" on the Vessel. That the Defendant, CARNIVAL, promotes its medical staff and represents them as being their employees and/or apparent agents through brochures, internet advertising, and on the Vessel. That CARNIVAL held out its staff, including Ship's physician and medical personnel as being direct employees or its apparent agents.

  44. That the Defendant, CARNIVAL, promotes the idea that the medical staff who work in its "medical centers" are under the control of and acting for and on behalf of CARNIVAL as part of a marketing tool to induce passengers such as the Plaintiff to buy cruises

on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

45. That CARNIVAL manifested to the Plaintiff in this case that its medical staff, including its Shipboard doctors and nurses were acting as its employees and/or apparent agents in various ways, including but not limited to the following:

(a) the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

(b) that the "medical centers" are owned and operated by CARNIVAL, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

(c) that the passenger is billed directly by CARNIVAL, whereas the "medical staff", including the doctor and nurse, are paid salaries by CARNIVAL to work in the "medical centers".

46. That the medical staff in this case, including its Shipboard physicians and nurses, were given uniforms to wear which include name tags, and which have the CARNIVAL name and logo. Said uniforms were required by CARNIVAL to be worn by the doctor and nurse.

47. That the doctor is considered to be an Officer on board the Vessel and a member of the crew, and was introduced to the passengers as one of the Ship's Officers.

48. That both the Ship's doctor and the nurse were held out to the passengers by CARNIVAL as being members of the Ship's crew.

49. That the Defendant put the Ship's physician and nurse under the command of the Ship's superior officers, including the Master of the Ship.

50. That the cruise line represents to immigration authorities that the physician and nurse are members of the Ship's crew.

51. That both the Ship's doctor and nurse eat with the Ship's crew.

52. That the Ship's physician and nurse provide services in the Ship's "medical centers" and the Plaintiff was required to go to the Ship's medical center to be seen for her condition.

53. That at the time of Plaintiff's presentment to the Ship's medical center, the Plaintiff was seen and examined by the Ship's doctor.

54. That based on the foregoing, the Plaintiff believed, and was reasonable in her belief, that the Ship's doctor was acting as a direct employee and/or apparent agents on behalf of the Defendant, and was never given any reason to believe otherwise.

55. That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

WHEREFORE, the Plaintiff, ILONA ISOM, demands judgment against the Defendant, CARNIVAL, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by law, as well as any further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

**DATED: September 15, 2022**     **BRAIS LAW FIRM**
*Attorneys for Plaintiff*
Dadeland Office Park
9300 S. Dadeland Blvd., Suite 101
Miami, Florida 33156
Telephone: (305) 416-2901
Facsimile:  (305) 416-2902

By: */s/ Michelle Y. Gurian*
   KEITH S. BRAIS
   Florida Bar No. 863319
   kbrais@braislaw.com
   MICHELLE Y. GURIAN

*Isom v. Carnival Corp.*

mgurian@braislaw.com
Florida Bar No.: 100312